IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

TRINA THOMAS O/B/O C.T.,     )
                                 )
    Plaintiff,         )
                                 )
v.                       )       No. 18-2467-TLP-tmp
                               )
NANCY A. BERRYHILL,      )
ACTING COMMISSIONER OF SOCIAL  )
SECURITY,            )
                               )
    Defendant.        )

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is Trina Thomas's appeal on behalf of her minor child from a final decision of the Commissioner of Social Security ("Commissioner") denying her son, C.T., supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act").[1] 42 U.S.C. § 1381-1385. For the reasons below, it is recommended that the decision of the Commissioner be affirmed.

## I.  PROPOSED FINDINGS OF FACT

On September 17, 2015, C.T. applied for SSI. (R. 145.) C.T. alleged disability beginning on September 1, 2012, due to asthma

_____

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

and clubfoot. (R. 145; 207.) In May 2016, C.T.'s application was reviewed by two state agency non-examining physicians specializing in occupational medicine and surgery. (R. 76; 87.) The state agency physicians concluded C.T. was not disabled within the meaning of the Act. (R. 79; 81.) C.T.'s application was denied initially and upon reconsideration by the Social Security Administration ("SSA"). (R. 70; 91.) In March 2017, C.T. was diagnosed with attention deficit hyperactivity disorder ("ADHD"). (R. 387.) At C.T.'s request, a hearing was held before an Administrative Law Judge ("ALJ") on December 19, 2017. (R. 28.)

After considering the record and the testimony given at the hearing, the ALJ used the three-step analysis applicable to childhood disability claims to conclude that C.T. was not disabled from the date the application was filed through the date of the decision. (R. 21.) At the first step, the ALJ found that C.T. had not engaged in substantial gainful activity during the relevant period. (R. 13.) At the second step, the ALJ concluded that C.T. suffers from the following severe impairments: asthma, left clubfoot, and ADHD. (R. 13.) At the third step, the ALJ concluded that C.T.'s impairments do not meet, medically equal, or functionally equal, either alone or in the aggregate, one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. 13; 21.) Accordingly, on February 21, 2018, the ALJ issued a decision denying C.T.'s request for benefits after finding that C.T. was not under a disability within the meaning of the Act. (R. 25.) On June 5, 2018, the SSA's Appeals Council denied C.T.'s request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

On July 11, 2018, Thomas, acting on behalf of C.T, filed the instant action.[2] (ECF No. 1.) Thomas alleges that: (1) the ALJ erred in finding C.T.'s ADHD did not meet a listed impairment because, as a categorical matter, ADHD is a listed impairment and (2) the decision of the Commissioner was not supported by substantial evidence. On September 27, 2019, the court ordered supplemental briefing on two additional questions: (1) whether the ALJ erred in not obtaining a medical opinion on whether C.T.'s ADHD was medically equivalent to a listing and (2) whether the ALJ erred in not ordering a consultative examination to assess the severity of C.T.'s ADHD. (ECF No. 13.)

---

[2]Thomas, without counsel, has filed the complaint and letter brief on behalf of C.T., her son. Though as a general matter parents may not bring suit on behalf of their minor children without counsel, this rule does not apply in the context of child SSI cases. See Adams ex rel. D.J.W. v. Astrue, 659 F.3d 1297, 1301 (10th Cir. 2011); Elustra v. Mineo, 595 F.3d 699, 705 (7th Cir. 2010); Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Harris v. Apfel, 209 F.3d 413, 416 (5th Cir. 2000).

## II.  PROPOSED CONCLUSIONS OF LAW

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole

-4-

and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Three-Step Analysis**

Section 1382c(a)(3)(C)(i) of the Act states that:

> An individual under the age of 18 shall be considered
> disabled for the purposes of this title if that
> individual has a medically determinable physical or
> mental impairment, which results in marked and severe
> functional limitations, and which can be expected to
> result in death or which has lasted or can be expected

to last for a continuous period of not less than 12
months . . . .

Under the Act, the claimant bears the ultimate burden of
establishing an entitlement to benefits. Lowery v. Comm'r, Soc.
Sec. Admin., 55 F. App'x 333, 341 (6th Cir. 2003).

A child's entitlement to social security benefits is
determined by a three-step sequential analysis set out in the
Social Security Regulations. See 20 C.F.R. § 416.924. First, the
child must not be engaged in substantial gainful activity. 20
C.F.R. § 416.924(b). Second, a finding must be made that the child
suffers from a medically determinable severe impairment. 20 C.F.R.
§ 416.924(c). In the third step, the ALJ determines whether the
impairment or combination of impairments meets, medically equals,
or functionally equals the severity of any impairment listed in 20
C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d).
If the impairment satisfies the criteria for a listed impairment,
the claimant is considered to be disabled. On the other hand, if
the claimant's impairment does not meet or equal a listed
impairment, the ALJ must find that the child is not disabled. Id.

A child's impairment is "functionally equal" to a listed
impairment "if the child has an extreme limitation in one area of
functioning, or a marked limitation in two areas of functioning."
Miller *ex rel*. Devine v. Comm'r of Soc. Sec., 37 F. App'x 146, 148

(6th Cir. 2002); 20 C.F.R. § 416.926a(a). A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

The terms "marked" and "extreme" limitation are defined by regulation. A marked limitation is one that "interferes seriously with [a child claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Such limitations are "the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id. An extreme limitation is one that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Extreme limitation "does not necessarily mean a total lack or loss of ability to function." Id. Rather, extreme limitation is "the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id.

**C.   Whether the ALJ Erred in Finding C.T.'s ADHD did not meet a
      Listed Impairment Because, as a Categorical Matter, ADHD is**

**a Listed Impairment**

C.T.'s first argument is that ADHD is categorically considered a listed impairment and that the ALJ erred in not awarding benefits on that basis.

Neurodevelopmental disorders can be a listed impairment under certain circumstances. 20 C.F.R. § Part 404, Subpart P, Appendix 1, 112.11. ADHD is a neurodevelopmental disorder. See Herndon v. U.S. Bancorp Fund Servs., LLC, No. 1:15-CV-751, 2017 WL 4349057, at *1 (S.D. Ohio Sept. 29, 2017) ("ADHD is a neurodevelopmental disorder that causes individuals to suffer from symptoms related to inattention."). For a neurodevelopmental disorder to be a listed impairment, two requirements must be met. 20 C.F.R. § Part 404, Subpart P, Appendix 1, 112.11. First, a claimant must provide medical documentation of one of the following four things: (1) "[f]requent distractibility, difficulty sustaining attention, and difficulty organizing tasks;" (2) "[h]yperactive and impulsive behavior;" (3) "[s]ignificant difficulties learning and using academic skills;" or (4) "[r]ecurrent motor movement or vocalization." Id. This is referred to as the Paragraph A requirement. Id. If the claimant meets the Paragraph A requirement, the claimant must then provide evidence of extreme limitation in one, or marked limitation in two, of the following areas of

functioning: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; or (4) the ability to adapt or manage oneself. Id. This is referred to as the Paragraph B requirement. Id.

C.T.'s argument that an ADHD diagnosis satisfies the requirements for this listing overlooks the existence of the Paragraph B requirement. The ALJ explained in her opinion that she found that C.T. did not meet the requirements for the Paragraph B listing for the reasons identified in the portion of the opinion devoted to functional equivalence. As discussed below, the ALJ's determination regarding functional equivalence was supported by substantial evidence. Consequently, the ALJ did not err in finding that C.T.'s ADHD did not meet a listing.[3]

D.    **Whether the ALJ's Decision was Supported by Substantial Evidence**

C.T.'s next argument is that the ALJ's decision was not

---

[3]Because Paragraph B of this listing includes four of the six functional domains, and requires an extreme limitation in one area of functioning or marked limitations in two areas of functioning, finding that C.T. did not have marked or extreme limitations in any area of functioning means C.T. would not meet this listing. For other listings, the analysis for whether a claimant meets a listing may not be interchangeable with the functional equivalence analysis in this fashion. See Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011).

supported by substantial evidence. C.T.'s challenge appears to focus on the ALJ's finding that C.T.'s ADHD and other impairments were not the functional equivalent of a listing.

As discussed above, for a child's impairments to be the functional equivalent of a listing, the child must have marked limitations in two domains of functioning, or extreme limitations in one domain. The first domain of functioning is acquiring and using information. In this domain, the SSA "consider[s] how well [a claimant] acquire[s] or learn[s] information, and how well [a claimant] use[s] the information [the claimant has] learned." 20 C.F.R. § 416.926a(g). The SSA has explained that a child between the ages of 6 and 12 functioning without limitation in this domain: "[l]earns to read, write, and do simple arithmetic;" "[b]ecomes interested in new subjects and activities (for example, science experiments and stories from history);" "[d]emonstrates learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions;" "[a]pplies learning in daily activities at home and in the community (for example, reading street signs, telling time, and making change);" and "[u]ses increasingly complex language (vocabulary and grammar) to share information, ask questions, express ideas, and respond to the opinions of others." SSR 09-3P,

2009 WL 396025.

The ALJ concluded that C.T. had a less-than-marked limitation in this domain. (R. 17.) The ALJ acknowledged that C.T. had "less than desirable academic performance." (R. 17.) However, the ALJ noted that C.T.'s ADHD had only recently been diagnosed, meaning C.T.'s limitations in functioning may be from a lack of treatment rather than the underlying impairment. (R. 17.); see 20 C.F.R. § 416.924a(b)(9) (instructing ALJs to evaluate the effect of treatment in assessing the extent of functional limitations). The ALJ further noted that C.T.'s condition improved with treatment. (R. 15; 395-397.) C.T has not been retained in any grade and was not in special education classes at the time of the ALJ's decision.[4] (R. 17.); but see 20 C.F.R. § 416.924a(b)(7)(iv) ("The fact that [a claimant] do[es] or do[es] not receive special education

---

[4]There is some ambiguity in the record about whether C.T. was receiving special education support at all at the time of the ALJ's decision. The ALJ concluded that C.T. was not receiving special education services. (R. 15.) This appears to have been based upon an answer to a question the ALJ asked Trina Thomas at the hearing, in which the ALJ asked if C.T. was "in special education classes" and Trina Thomas replied that he was not. (R. 47.) However, earlier in the hearing, Trina Thomas testified that C.T. was receiving one-on-one help from a tutor in the school. (R. 47.) It is unclear to the undersigned whether this tutor was provided by the school as part of special education services. The ALJ did not request the school provide a special education plan, copy of an individualized education plan, or certification that no such plan existed following C.T.'s ADHD diagnosis. Before C.T.'s diagnosis, no such plan existed. (R. 309.)

services does not, in itself, establish [a claimant's] actual limitations or abilities."). Furthermore, C.T.'s poor academic performance was primarily the result of missed homework assignments, which the ALJ concluded was "not necessarily the result of an underlying impairment." (R. 17.) Treatment notes from C.T.'s therapist assessed his intellect as being "average." (R. 393.) Based on this evidence, the ALJ concluded that C.T. had not met his burden to demonstrate marked or extreme limitations. (R. 17.)

C.T. challenges this finding, but does not identify contrary evidence in the record. The court's review of an ALJ's decision is limited; it may only reverse when the ALJ either failed to apply the correct legal standard or when the ALJ's decision is not supported by substantial evidence. In light of the evidence the ALJ laid out in her opinion, that standard is met.

The second domain of functioning is attending and completing tasks. In this domain, the SSA "consider[s] how well [a claimant is] able to focus and maintain [the claimant's] attention, and how well [the claimant] begin[s], carr[ies] through, and finish[es] [the claimant's] activities, including the pace at which [the claimant] perform[s] activities and the ease with which [the claimant] change[s] them." 20 C.F.R. § 416.926a(h). The SSA has

explained that a child between the ages of 6 and 12 functioning without limitation in this domain: "[f]ocuses attention in a variety of situations in order to follow directions, completes school assignments, and remembers and organizes school-related materials;" "[c]oncentrates on details and avoids making careless mistakes;" "[c]hanges activities or routines without distracting self or others;" "[s]ustains attention well enough to participate in group sports, read alone, and complete family chores;" and "[c]ompletes a transition task without extra reminders or supervision (for example, changing clothes after gym or going to another classroom at the end of a lesson)." SSR 09-4P, 2009 WL 396033.

The ALJ concluded that C.T. had a less-than-marked limitation in this domain. (R. 17.) Much of the evidence relevant to C.T.'s performance in this domain of functioning overlaps with the evidence relevant to C.T.'s performance in the first domain of functioning. See SSR 09-1P, 2009 WL 396031 (describing how particular activities will often be relevant to multiple domains of functioning). As such, the ALJ's analysis here was essentially the same as in the first domain of functioning: although C.T.'s ADHD caused some limitation, C.T.'s condition had improved with treatment and the evidence in the record simply did not justify a

-13-

finding of marked limitation. (R. 17; 395-397.)

C.T. challenges this finding. But once again, C.T. does not cite evidence in the record that counters the ALJ's finding. Based on the deferential standard of review, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

The third domain of functioning is interacting and relating with others. In this domain, the SSA "consider[s] how well [a claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [the claimant's] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The SSA has explained that a child between the ages of 6 and 12 functioning without limitation in this domain: "[d]evelops more lasting friendships with same-age children;" "[i]ncreasingly understands how to work in groups to create projects and solve problems;" "[i]ncreasingly understands another's point of view and tolerates differences (for example, playing with children from diverse backgrounds);" "[a]ttaches to adults other than parents (for example, teachers or club leaders), and may want to please them to gain attention;" and "[s]hares ideas, tells stories, and speaks in a manner that can be readily understood by familiar and unfamiliar

listeners." SSR 09-5P, 2009 WL 396026.

The ALJ found that C.T. had no limitations in this area. (R. 18.) The ALJ explained that the only evidence of limitations in C.T.'s ability to interact and relate to others was Trina Thomas's testimony that he had significant behavioral problems at school. (R. 18.) This was not corroborated by C.T.'s school records, which showed only excellent behavior.[5] (R. 245.) The ALJ found no other evidence in the record that would support a finding of limitations in this domain. (R. 18.)

C.T. challenges this finding, but does not cite evidence in the record that demonstrates C.T. had behavioral problems that affected his ability to interact and relate with others. The undersigned's review of the record has not found such evidence. As a result, the ALJ's decision in this domain is supported by substantial evidence.

The fourth domain of functioning is moving about and manipulating objects. In this domain, the SSA "consider[s] how [a

---

[5]Admittedly, only a week's worth of school records are available in the record. (R. 245.) But the burden of producing evidence of disability was on C.T. Lowery, 55 F. App'x at 341. But see Sims v. Apfel, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."); Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051 (6th Cir. 1983) (holding that ALJs have a heightened duty to develop the record when a claimant is unrepresented or otherwise vulnerable).

claimant] move[s] [the claimant's] body from one place to another
and how [the claimant] move[s] and manipulate[s] things." 20 C.F.R.
§ 416.926a(j). This is an analysis of "gross and fine motor
skills." Id. The SSA has explained that a child between the ages
of 6 and 12 functioning without limitation in this domain: "[u]ses
developing gross motor skills to move at an efficient pace at home,
at school, and in the neighborhood;" "[u]ses increasing strength
and coordination to participate in a variety of physical activities
(for example, running, jumping, and throwing, kicking, catching
and hitting balls);" "[a]pplies developing fine motor skills to
use many kitchen and household tools independently (for example,
scissors);" and "[w]rites with a pen or pencil." SSR 09-6P, 2009
WL 396028.

The ALJ concluded that C.T. had less-than-marked limitations
in this area based on his asthma and clubfoot. (R. 19.) C.T.'s
asthma responded positively to treatment. (R. 19.) The ALJ
interpreted medical records from March 2016 to indicate that C.T.
did not have gait abnormalities related to his clubfoot at that
time. (R. 15; 339.) Furthermore, C.T.'s clubfoot did not require
surgical intervention or medical treatment beyond some physical
therapy. (R. 19.) As a result, the ALJ found C.T. had not
demonstrated marked or extreme limitations in this area of

-16-

functioning. (R. 19.)

It is not entirely clear whether C.T. challenges the ALJ's finding regarding this domain. C.T. references his clubfoot and asthma diagnosis in his brief, but might have done so to provide explanatory background rather than to challenge that ALJ's finding. Assuming C.T. has challenged the ALJ's finding here, the ALJ's decision regarding this domain of functioning was supported by substantial evidence.

The fifth domain of functioning is caring for oneself. In this domain, the SSA "consider[s] how well [a claimant] maintain[s] a healthy emotional and physical state, including how well [a claimant can] get [the claimant's] physical and emotional wants and needs met in appropriate ways; how [the claimant can] cope with stress and changes in your environment; and whether [the claimant can] take care of [the claimant's] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). The SSA has explained that a child between the ages of 6 and 12 functioning without limitation in this domain: "[r]ecognizes circumstances that lead to feeling good and bad about himself;" "[b]egins to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior;" "[d]emonstrates consistent control over behavior and avoids behaviors that are unsafe;"

-17-

"[b]egins to imitate more of the behavior of adults she knows;
"[p]erforms most daily activities independently (for example,
dressing, bathing), but may need to be reminded." SSR 09-7P, 2009
WL 396029.

The ALJ found that C.T. had no limitations in this area. (R.
20.) The ALJ noted that C.T. had no documented self-harming
behaviors. (R. 20.) As noted earlier, there was no corroborated
evidence of behavioral problems by C.T. and C.T.'s school records
showed only excellent behavior. (R. 18; 245.)

C.T. challenges this finding. C.T. asserts that he requires
constant monitoring because of a lack of impulse control, and that
he cannot go for even short periods of time without supervision.
But while C.T. makes these assertions in his brief, C.T. does not
point to evidence in the record to support them. The undersigned's
review of the record has found no such evidence. As a result, the
ALJ's decision in this domain is supported by substantial evidence.

The sixth and final domain of functioning is health and
physical well-being. This is a catch-all category for the
"cumulative physical effects of physical or mental impairments and
their associated treatments or therapies on your functioning that
we did not consider in paragraph (j) of this section [the domain
of moving about and manipulating objects]." 20 C.F.R. §

-18-

416.926a(l). Age is less likely to affect a child's functioning in this domain, so the SSA does not provide specific instructions for what activities a child between the ages of 6 and 12 functioning without limitation in this domain would be expected to engage in. See SSR 09-8P, 2009 WL 396030. However, a child functioning with some degree of limitation in this area may: "[have] generalized symptoms caused by an impairment(s) (for example, tiredness due to depression);" "[have] somatic complaints related to an impairment(s) (for example, epilepsy);" "[have] chronic medication side effects (for example, dizziness);" "[n]eed[] frequent treatment or therapy (for example, multiple surgeries or chemotherapy);" "[e]xperience[] periodic exacerbations (for example, pain crises in sickle cell anemia);" or "[n]eed[] intensive medical care as a result of being medically fragile." Id.

The ALJ concluded that C.T. had less-than-marked limitations in this area based on his asthma and clubfoot. (R. 21.) As noted above, C.T.'s physical conditions responded well to comparatively non-invasive treatment. (R. 19.) As a result, for much the same reasons as the ALJ concluded C.T.'s physical impairments did not create a marked impairment in the fourth domain, the ALJ concluded C.T. had not met his burden to show marked impairment in this

-19-

domain.

Just as in the fourth domain, it is ambiguous whether C.T. seeks to challenge the ALJ's finding here. However, if C.T. does challenge the ALJ's finding, the undersigned concludes the decision was supported by substantial evidence.

The ALJ's findings that C.T. did not have marked or extreme limitations in any area of functioning are supported by substantial evidence. Given that C.T. would have needed to demonstrate marked impairments in two areas of functioning or extreme limitations in one area to be considered disabled at a level functionally equivalent to the listings, the ALJ's factual determinations on this issue were thus supported by substantial evidence.

**F.    Whether the ALJ Erred in Failing to Obtain a Medical Opinion on Medical Equivalence**

There is no medical opinion in the record about whether C.T.'s ADHD is medically equivalent to a listing. Ordinarily, state agency physicians would make such an assessment in their review of a claimant's file. However, because C.T.'s ADHD was diagnosed after his file was reviewed by the state agency physicians, the state agency physicians could not assess the severity of his ADHD. C.T. did not submit medical opinion evidence on medical equivalence, and the ALJ did not request a consultative examination to evaluate C.T.'s ADHD.

-20-

Some courts in the Sixth Circuit have held that an ALJ's failure to obtain a medical opinion on the issue of whether an impairment medically equals a listing is an error justifying remand. See, e.g., Fields v. Comm'r of Soc. Sec., No. 15-13895, 2017 WL 1214342, at *12 (E.D. Mich. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1190949 (E.D. Mich. Mar. 31, 2017). In supplemental briefing, the Commissioner argues that those courts that have held that ALJs are required to obtain an opinion on medical equivalence did so based on language from Social Security Ruling ("SSR")[6] 96-6p, which was rescinded and replaced by SSR 17-2p on March 27, 2017. SSR 17-2P, 2017 WL 3928306, at *1 (March 27, 2017). SSR 17-2p unequivocally states that ALJs are obliged to obtain a medical opinion on medical equivalence only if the evidence reasonably supports a finding of medical equivalence. Id. at *4. The Commissioner argues SSR 17-2p governed the ALJ's decision in this case. C.T. did not file a supplemental brief.

The Commissioner's argument raises three issues: (1) whether SSR 17-2p governs here, where the claim of benefits was filed before March 27, 2017, but the ALJ reached her decision after March 27, 2017; (2) whether SSR 17-2p effectively eliminates the

---

[6]SSRs are "precedent[,] final opinions and orders[,] and statements of policy and interpretations" adopted by the SSA. 20 C.F.R. § 402.35. SSRs are binding on ALJs. Id.

requirement to obtain a medical opinion before reaching a decision on medical equivalence absent a showing that the evidence reasonably supports a finding of medical equivalence; and (3) if so, whether the evidence reasonably supports a finding of medical equivalence here.

      1.    <u>Whether SSR 17-2p Governs Claims That Were Filed Before March 27, 2017, but Decided After That Date</u>

On March 27, 2017, the SSA significantly revised its rules for evaluating medical opinions. 82 Fed. Reg. 5844-01 (reprinted at 2017 WL 168819). Most of the revisions apply only to claims filed after March 27, 2017. <u>Id.</u> "[A] split of authority exists as to whether SSR 17-2p or the now-rescinded SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) applies to cases, such as this, where the claim for benefits was filed before the effective date for SSR 17-2 of March 27, 2017." <u>Taylor v. Comm'r of Soc. Sec.</u>, No. CV 18-13180, 2019 WL 5106371, at *6 n.2 (E.D. Mich. Sept. 23, 2019), <u>report and recommendation adopted</u> <u>sub nom.</u>, 2019 WL 5102973 (E.D. Mich. Oct. 11, 2019). One line of cases holds that SSR 96-6p still governs claims filed before March 27, 2017. Those cases rely on language from a section of the SSA's Hearing and Appeals Law and Litigation Manual ("HALLEX")[7] discussing how ALJs should

---

[7]Interpretations of SSA policy in HALLEX are non-binding persuasive

apply the set of new rules governing medical evidence issued on
March 27, 2019. HALLEX states that "[f]or claim(s) filed before
March 27, 2017, adjudicators must use the prior rules throughout
the entire appeals process." HALLEX I-5-3-30, 2017 WL 1362776, at
*5. Based on this language, some courts have concluded SSR 96-6p
continues to apply to claims filed before March 27, 2017. See,
e.g., O'Brien v. Comm'r of Soc. Sec., No. 18-11546, 2019 WL
5162859, at *3 (E.D. Mich. Oct. 15, 2019). Another line of cases
holds that SSR 96-6p only governs claims where the ALJ reached his
or her decision before March 27, 2017. See, e.g., Balknight v.
Comm'r of Soc. Sec., No. 18-11843, 2019 WL 4011881, at *26 (E.D.
Mich. July 31, 2019). Balknight notes that HALLEX instructs ALJs
to cite to SSR 17-2p, not SSR 96-6p, "[f]or claim(s) filed before
March 27, 2017" and reasons that this more specific instruction
controls over the general command to use the prior rules. Id.

The latter line of cases is more persuasive. Though it is
true HALLEX instructs ALJs to use the "prior rules" in deciding
cases from before March 27, 2017, the phrase "prior rules" in
HALLEX I-5-3-30 is a defined term referring to regulations
containing the phrase "[f]or claims filed before March 27, 2017,

---

authority for reviewing courts. See Bowie v. Comm'r of Soc. Sec.,
539 F.3d 395, 399 (6th Cir. 2008).

-23-

the rules in this section apply." HALLEX I-5-3-30, 2017 WL 1362776, at *2. Though the "prior rules" are "similar to the regulations as they existed before March 27, 2017, the agency made some changes." HALLEX I-5-3-30, 2017 WL 1362776, at *5. By stating that ALJs should cite to SSR 17-2p, not SSR 96-6p, for claims filed before March 27, 2017, HALLEX has established that SSR 96-6p is not a part of the prior rules. Consequently, the undersigned agrees with the Commissioner that SSR 17-2p, not SSR 96-6p, is applicable to the claim at issue in this case.

2.    Whether SSR 17-2p Effectively Eliminates the Requirement to Obtain a Medical Opinion Before Reaching a Decision on Medical Equivalence

Those courts that concluded that ALJs were required to obtain a medical opinion before rendering an opinion on medical equivalence generally relied on two authorities: 20 C.F.R. § 416.926(c)[8] and SSR 96-6p. See Walker v. Comm'r of Soc. Sec. Admin., No. 2:18-CV-10483, 2019 WL 1086379, at *4 (E.D. Mich. Feb. 19, 2019), report and recommendation adopted sub nom., 2019 WL 1077289 (E.D. Mich. Mar. 7, 2019) ("Contrary to the ALJ's incorrect statement in his opinion, the applicable regulation and SSR

---

[8]Strictly speaking, some cases involved 20 C.F.R. § 404.1526, an identical version of 20 C.F.R. § 416.926 that applies to SSDI claims.

both *require* that an opinion by a medical consultant be considered in making such an assessment[.]"); Andras v. Comm'r of Soc. Sec., No. 18-10192, 2019 WL 1246253, at *5 (E.D. Mich. Feb. 11, 2019), report and recommendation adopted, 2019 WL 1242228 (E.D. Mich. Mar. 18, 2019) ("Indeed, the applicable regulation requires that an opinion by a medical consultant be considered in making such an assessment[.]"); see also Retka v. Comm'r of Soc. Sec., 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).[9] For obvious reasons, SSR 17-2p means SSR 96-6p is no longer valid authority. However, SSR 17-2p's effect on § 416.926(c) is less obvious.

Section 416.926(c) is a regulation. Regulations have the force of law, while SSRs do not. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 498 n.2 (6th Cir. 2006). Consequently, if an SSR conflicts with a regulation, the regulation wins. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 549 (6th Cir. 2004); Clanton v. Comm'r of Soc. Sec., No. 1:14-CV-1039, 2016 WL 74421, at *6 (W.D. Mich. Jan. 6, 2016). However, SSRs are authoritative statements of the

---

[9]At the time Retka was decided, 20 C.F.R. § 416.926(b) governed what evidence ALJs considered in deciding medical equivalence, information now contained in § 416.926(c).

SSA's interpretation of its own regulations, which the Sixth
Circuit has ruled are owed deference under the standard set forth
in Auer v. Robbins, 519 U.S. 452, 461 (1997). Wilson, 378 F.3d at
549. Traditionally, under Auer, an agency's interpretation of its
own regulations would be upheld unless "plainly erroneous
or inconsistent with the regulation[.]" Wilson, 378 F.3d at 549.
However, earlier this year the Supreme Court narrowed the scope of
Auer deference in Kisor v. Wilkie, 139 S. Ct. 2400, 2414 (2019).
Under the new approach, as summarized by the Third Circuit:

> [A]n agency's interpretation of a regulation is entitled
> to deference under Auer only if five criteria are met:
> (1) the regulation must be genuinely ambiguous after the
> court has exhausted all the traditional tools of
> construction; (2) the interpretation must be reasonable,
> falling within the zone of ambiguity the court has
> identified after employing all its interpretive tools;
> (3) the character and context of the agency
> interpretation must entitle it to controlling weight as
> the agency's authoritative or official position such as
> official staff memoranda that were published in the
> Federal Register; (4) the agency's interpretation must
> in some way implicate its substantive expertise; and,
> finally, (5) the agency's reading of a rule must reflect
> fair and considered judgment, that is more than a
> convenient litigating position or a post hoc
> rationalization.

Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d
187, 204-05 (3d Cir. 2019) (internal citations, quotations, and
alterations omitted). SSR 17-2p is an interpretation of §
416.926(c), and is thus owed Auer deference if the five criteria

outlined in <u>Kisor</u> are met. SSR 17-2P, 2017 WL 3928306, at *1 (March 27, 2017).

The last three factors of the <u>Kisor</u> test can be dealt with quickly. SSRs are the SSA's official interpretations of its own regulations, the SSA has substantive expertise in interpreting its oft-complex regulations, and the interpretation at issue here was not adopted post-hoc or solely as a litigating position. <u>See</u> <u>Wilson</u>, 378 F.3d at 549 (holding that, as a general matter, SSRs are owed <u>Auer</u> deference). This leaves whether the regulation is ambiguous and whether the agency's interpretation of the regulation is reasonable. Because this is a textual analysis, it is helpful to turn to the language of § 416.926(c), which is as follows:

> What evidence do we consider when we determine if your impairment(s) medically equals a listing? When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 416.960(c)(1)). *We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.* (See § 416.1016.)

20 C.F.R. § 416.926(c) (emphasis added). Section 416.926(c) does not speak unambiguously about the issue here. It is unambiguous from the regulation that medical opinions are relevant to the issue

of medical equivalence. But what happens if no medical opinion exists in the record is unclear. One could plausibly read the language "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner" to require that the SSA consider a medical opinion before reaching a decision on medical equivalence. But one could also read the same language as simply identifying medical opinions as being relevant if available in a given case. The regulation creates a range of reasonable interpretations, from which the agency may choose the appropriate reading. The agency's chosen interpretation – that ALJs should obtain medical opinion evidence if the evidence in the record reasonably supports a finding of medical equivalence, but need not do so otherwise – is one such reasonable interpretation of this ambiguous regulatory text. Consequently, the undersigned is bound to defer to the agency's reasonable interpretation of its own regulations. SSR 17-2p thus means there is no automatic requirement to obtain a medical opinion before reaching a decision on medical equivalence.

3.    Whether the Evidence Reasonably Supports a Finding of
      Medical Equivalence

20 C.F.R. § 416.926(b) establishes the requirements for a showing of medical equivalence. It provides that a claimant may demonstrate medical equivalence in one of three ways:

-28-

(1)(i) If [the claimant has] an impairment that is
described in the Listing of Impairments in appendix 1 of
subpart P of part 404 of this chapter, but — (A) [the
claimant does] not exhibit one or more of the findings
specified in the particular listing, or (B) [the
claimant] exhibit[s] all of the findings, but one or
more of the findings is not as severe as specified in
the particular listing, (ii) [The SSA] will find that
[the claimant's] impairment is medically equivalent to
that listing if [the claimant has] other findings
related to [the claimant's] impairment that are at least
of equal medical significance to the required criteria.

(2) If [the claimant has] an impairment(s) that is not
described in the Listing of Impairments in appendix 1 of
subpart P of part 404 of this chapter, [the SSA] will
compare [the claimant's] findings with those for closely
analogous listed impairments. If the findings related to
[the claimant's] impairment(s) are at least of equal
medical significance to those of a listed impairment,
[the SSA] will find that [the claimant's] impairment(s)
is medically equivalent to the analogous listing.

(3) If [the claimant has] a combination of impairments,
no one of which meets a listing described in the Listing
of Impairments in appendix 1 of subpart P of part 404 of
this chapter (see § 416.925(c)(3)), [the SSA] will
compare [the claimant's] findings with those for closely
analogous listed impairments. If the findings related to
[the claimant's] impairments are at least of equal
medical significance to those of a listed impairment,
[the SSA] will find that [the claimant's] combination of
impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b). As aptly summarized by the Sixth

Circuit, this "regulation allows for variation in the number, type,

or severity of the claimant's conditions, so long as the claimant's

overall impairment is 'at least of equal medical significance' to

a listed impairment." <u>Biestek v. Comm'r of Soc. Sec.</u>, 880 F.3d 778, 784 (6th Cir. 2017) (quoting 20 C.F.R. § 404.1526(b)).

This is not a case where a claimant has an impairment with a severity that almost, but not quite, meets a listing. C.T. did not have marked impairments in any of the Paragraph B criteria required to meet a listing for a neurodevelopmental disorder. This is also not a case where a claimant has an impairment that is closely analogous to, but technically not, a listed impairment. ADHD is a neurodevelopmental disorder, and neurodevelopmental disorders have their own individual listing. Furthermore, this is not a case where a claimant's impairments, in combination, may medically equal a listing where each impairment alone did not. Though it is true C.T. has multiple impairments, when those impairments were considered together in the ALJ's functional analysis, C.T. still did not have marked impairments in any area of functioning. The ALJ did not err in concluding that the evidence did not reasonably support a finding of medical equivalence.

**G.    Whether the ALJ Erred in Failing to Order a Consultative Examination to Assess the Severity of C.T.'s ADHD**

The final issue is whether the ALJ erred in failing to order a consultative examination to asses the severity of C.T.'s ADHD.

"It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" <u>Sims v.</u>

-30-

*Apfel*, 530 U.S. 103, 111 (2000). An ALJ has a heightened duty to develop the record when the claimant is not represented by counsel and cannot effectively represent themselves. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983); see also *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015). Despite this, the ultimate burden of establishing disability remains with the claimant even when the ALJ's heightened duty to develop the record is triggered. *Strang v. Comm'r of Soc. Sec.*, 611 F. App'x 271, 275 (6th Cir. 2015).

"The duty to fully and fairly develop the record can include a duty to order a consultative examination." *Myers v. Comm'r of Soc. Sec.*, No. 1:14-CV-271-HSM-skl, 2015 WL 9906165, at *8 (E.D. Tenn. Dec. 30, 2015), *report and recommendation adopted sub nom.*, 2016 WL 297753 (E.D. Tenn. Jan. 22, 2016). SSA regulations empower ALJs to obtain a consultative examination when there "is an indication of a change in [a claimant's] condition that is likely to affect" a child claimant's "functioning, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. § 416.919a(b)(4). However, when the evidence is sufficient to support a decision, an ALJ does not err by not ordering a consultative examination. *Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013); *Weeks v. Shalala*, 65 F.3d 169 (6th

Cir. 1995); see also Ferguson v. Comm'r of Soc. Sec., 628 F.3d
269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine
whether additional evidence is necessary.").

Here, the ALJ had treatment records, school records, and in-person testimony that addressed the severity of C.T.'s ADHD. That evidence showed, among other things, that C.T.'s ADHD had responded well to treatment and that he had never been held back in a grade or placed in special education classes. This evidence, along with the other evidence in the record that C.T.'s ADHD did not have a marked effect on any area of functioning, allowed the ALJ to come to an informed decision supported by substantial evidence about the severity of C.T.'s ADHD. Given this, the ALJ did not err in not ordering a consultative examination.

### III.    RECOMMENDATION

For the reasons above, it is recommended that the Commissioner's decision be affirmed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

November 7, 2019
Date


### NOTICE

-32-

WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.    ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.    28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).    FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.